## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: TK HOLDINGS, INC., *et al.*, | : | Chapter 11 |
| | : | Case No. 17-11375 (BLS) |
| Debtors. | : | (Jointly Administered) |
| | : | |

| | | |
|---|---|---|
| ERIC D. GREEN, as Trustee of the Takata | : | Adv. Pro. 20-51004 (BLS) |
| Airbag Tort Compensation Trust Fund, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | Civ. No. 22-009-RGA |
| MITSUI SUMITOMO INSURANCE | : | |
| COMPANY, LIMITED, | : | |
| | : | |
| Appellee. | : | |

## OPINION

Stanley B. Tarr, Blank Rome LLP, Wilmington, Delaware; David J. Molton, Gerard T. Cicero, Brown Rudnick LLP, New York, New York; Kami E. Quinn, Emily P. Grim, Sarah A. Sraders, Gilbert LLP, Washington, DC, attorneys for Eric D. Green, in his capacity as Trustee of the Takata Airbag Tort Compensation Trust.

Evan T. Miller, Daniel N. Brogan, Steven D. Adler, attorneys for Mitsui Sumitomo Insurance Company, Ltd.

June 30, 2023

**ANDREWS, UNITED STATES DISTRICT JUDGE:**

This appeal was filed by the Trustee for the Takata Airbag Tort Compensation Trust Fund ("Trust"), which was established by the confirmed plan of reorganization in the chapter 11 cases of TK Holdings, Inc. and certain affiliates (collectively, "Debtors"), to resolve and compensate claims alleging personal injuries or wrongful death allegedly caused by airbag inflators using phase-stabilized ammonium nitrate ("PSAN") as a propellant, and other products manufactured by the Debtors. The Trustee filed this action following a dispute between the Trust and appellee Mitsui Sumitomo Insurance ("MSI") over the impact of the Debtors' plan on MSI's payment obligations to the Trust, as successor-in-interest to the Debtors' rights under insurance policies issued by MSI. The Bankruptcy Court issued an order (D.I. 1-2) ("Order") granting MSI's motion to dismiss the adversary proceeding for lack of jurisdiction, along with its accompanying opinion, *In re TK Holdings, Inc.*, 2021 WL 6101496 (Bankr. D. Del. Dec. 20, 2021) ("Opinion"). For the reasons set forth herein, the Court will affirm the Order.

## I.    BACKGROUND

### A.    The MSI Policies

Prior to the petition date, MSI, a Japanese corporation, issued three insurance policies to debtor Takata Corporation providing up to $120 million in coverage (A4677-4789)[1] (the "MSI Policies"). The three covered April 1, 2015 through March 31, 2018, and I refer to them as the 2015 MSI Policy, the 2016 MSI Policy, and the 2017 MSI Policy.

---

[1] The appendix (D.I. 12-14) filed in support of MSI's answering brief (D.I. 11) is cited herein as "A__." The docket of the chapter 11 cases, captioned *In re TK Holdings, Inc.*, No. 17-11375 (BLS) (Bankr. D. Del.), is cited herein as "Bankr. D.I. __." The docket of the adversary proceeding, captioned *Green v. Mitsui Sumitomo Ins. Co.,* Adv. No. 20-51004 (BLS) (Bankr. D. Del.), is cited herein as "Adv. D.I. __."

The 2015 and 2016 MSI Policies are second layer policies that provide excess insurance above certain primary insurance policies.  The 2017 MSI Policy is a per-occurrence self-insured indemnity retention ("SIR") policy.  The 2017 MSI Policy contains a provision regarding Debtors' obligation to satisfy an SIR as a pre-condition to coverage.  There is no coverage until $55 million *"is actually paid by any insured* as an indemnity for a claim which is made against any insured during the policy period, or [...] *is actually paid by* [the U.S. Department of Justice-ordered personal injury restitution] Fund" during the policy period ... ."  (A4783, 2017 MSI Policy, Endorsement 21 (emphasis added)).  Thus, MSI argues, it has no obligation to any party purportedly covered by the 2017 MSI Policy until all SIR requirements are satisfied, measured by amounts "actually paid."  (*Id.*)

Each MSI Policy contains an endorsement requiring that all disputes be resolved in Japan under Japanese law.  "[A]ny dispute pertaining to the interpretation, application, or construction of this insurance contract shall be resolved and filed solely in a Japanese court; and the law applicable to resolution of such dispute shall be the law of Japan." (*See* A4693, 2015 MSI Policy, Endorsement 11; A4733, 2016 MSI Policy, Endorsement 10 (same); and A4771, 2017 MSI Policy, Endorsement 10 (same)).

Finally, each of the MSI Policies requires MSI to pay all sums that the Trust becomes legally obligated to pay for bodily injury claims against the Trust, and to defend any claim against the Trust that seeks damages on account of such bodily injury.  The MSI Policies provide for worldwide coverage.  The MSI Policies provide, "Bankruptcy or insolvency of the insured or of the insured's estate will not relieve [MSI] of [its] obligations under this Coverage Part." (*See* 2016 Policy, Prods./Completed Operations Liab. Coverage Form, § IV.1; 2017 Policy, Prods./Completed Operations Liab. Coverage Form, § IV.1; 2015 Policy, Conditions, § 4 (similar language)).

### B.    The Chapter 11 Cases

#### 1.    The Plan and Confirmation Order

In 2017, the Debtors filed for chapter 11 bankruptcy protection in response to liabilities

arising from claims alleging personal injury and/or wrongful death allegedly caused by airbag

inflators that the Debtors manufactured ("PI/WD Claims").   On February 21, 2018, the

Bankruptcy Court entered an order (A3804-4553) ("Confirmation Order") confirming the Debtors'

plan of reorganization (A2094-2725) ("Plan").  Among other things, the Plan established a

framework for resolving and compensating the PI/WD Claims.

First, the Plan established the Trust to assume and resolve equitably the Debtors' liabilities

for current and future PI/WD Claims.  Section 5.10(a) states that the Trust "shall . . . assume the

liability for all PSAN PI/WD Claims against the Debtors and the Protected Parties" and further:

> shall administer, process, settle, resolve, liquidate, satisfy, and pay (from the
> designated funds therefor), as applicable, PSAN PI/WD Claims against the Debtors
> and the Protected Parties, [and] Other PI/WD Claims against the Debtors … in such
> a way that the holders of Trust Claims within each such category are treated
> equitably and in a substantially similar manner, respectively, subject to the terms of
> the Plan, the PSAN PI/WD Trust Agreement, and the PSAN PI/WD TDP.

A2197-A2198, Plan at § 5.10(a)).

Second, the Plan provided funding for the Trust by transferring all of the Debtors'

insurance rights under policies potentially applicable to PI/WD Claims to the Trust (the "PI/WD

Insurance Rights.").  Section 5.10(f)(i) states that:

> the Debtors shall irrevocably transfer, grant, and assign to the PSAN PI/WD Trust,
> and the PSAN PI/WD Trust shall receive and accept, any and all of the Debtors'
> PI/WD Insurance Rights. … This Insurance Rights Transfer is made to the PSAN
> PI/WD Trust for the benefit of Persons that have a Claim for compensation for
> damages against the Debtors.

(A2200, Plan at § 5.10(f)(i) (the "Insurance Rights Transfer Provision")).  The "PI/WD Insurance

Rights" include:

4

> [A]ny and all rights, titles, privileges, interests, claims, demands, or entitlements of the Debtors to any proceeds, payments, benefits, Causes of Action, choses in action, defense or indemnity arising under or attributable to any and all PI/WD Insurance Policies, now existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent. For the avoidance of doubt, PI/WD Insurance Rights shall include the PSAN PI/WD Insurance Rights.

(A2125, Plan at § 1.1). "PSAN PI/WD Insurance Rights" are:

> [A]ny and all rights, titles, privileges, interests, claims, demands, or entitles (sic) of the Debtors to any proceeds, payments, benefits, Causes of Action, choses in action, defense or indemnity arising under or attributable to any and all PSAN PI/WD Insurance Policies, now existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured[] or unmatured, disputed or undisputed, fixed or contingent.

(*Id.*) The Plan also states that "[t]he Insurance Rights Transfer shall be governed by, and construed in accordance with, the Bankruptcy Code and the laws of Delaware, without regard to its conflict of law principles." (A2201, Plan at § 5.10(f)(viii)).

The Plan included certain "insurance neutrality" language. Section § 5.10(x) of the Plan provides, in relevant part:

> (i)    Nothing contained in the Plan, the Plan Documents, or the Confirmation Order, including any provision that purports to be preemptory or supervening, shall in any way operate to, or have the effect of, impairing, altering, supplementing, changing, expanding, decreasing, or modifying (a) the rights or obligations of any of the Insurers or (b) any rights or obligations of the Debtors arising out of or under any Insurance Policy. For all issues relating to insurance coverage, the provisions, terms, conditions, and limitations of the Insurance Policies shall control.

> (ii)   For the avoidance of doubt, nothing contained in the Plan, the Plan Documents, or the Confirmation Order shall operate to require any PI/WD Insurance Company to indemnify or pay the liability of any Protected Party that it would not have been required to pay in the absence of this Plan. This subparagraph (ii) in no way modifies, alters or limits the rights and/or obligations set forth in subparagraph (i), above.

> (iii)  None of (a) the Bankruptcy Court's or District Court's approval of the Plan or the Plan Documents, (b) the Confirmation Order or any findings and conclusions entered with respect to confirmation, nor (c) any estimation or valuation of any PSAN PI/WD Claims or Trust Administered Claims, either

individually or in the aggregate in the Chapter 11 Cases, shall, with respect to any insurance company, constitute a trial or hearing on the merits or an adjudication or judgment with respect to any Trust Claim.

(A2210-A2211, Plan at § 5.10(x)).  The Plan further provides: "The PSAN PI/WD Trust shall satisfy, to the extent required under applicable law, any retrospective premiums, deductibles, and SIRs arising in any way out of any and all PSAN PI/WD Claims or Trust Administered Claims." (A2200, Plan at § 5.10(f)(iii)).  Finally, as to jurisdiction, the Plan provides, "[T]he Bankruptcy Court shall retain exclusive jurisdiction of all matters arising under, arising out of, or related to the Chapter 11 cases and the Plan … for, among other things, the following purposes: … to hear and resolve disputes related to the Insurance Rights Transfer or the PI/WD Insurance Rights, to the extent permitted under applicable law." (A2255, Plan at § 11.1(a)(xi)).

Consistent with the Plan, the Confirmation Order stated that the Insurance Rights Transfer was "valid and enforceable under sections 541(e), 1123(a)(5)(B), and 1129(a)(1) of the Bankruptcy Code," and that "the Bankruptcy Code preempts any anti-assignment contractual provisions and applicable state law." (A3877, Confirmation Order ¶ 55).  It further confirmed that neither the Plan nor the Confirmation Order "shall in any way operate to, or have the effect of … decreasing, or modifying (a) the … obligations of any of the Insurers, or (b) any rights … of the Debtors arising out of or under any Insurance Policy." (A3879, Confirmation Order ¶ 59(a)).

Finally, the PSAN PI/WD Trust Agreement (Bankr. D.I. 2505-1) (the "Trust Agreement") and PSAN PI/WD Trust Distribution Procedures (Bankr. D.I. 2505-2) ("TDPs") implement the framework for resolving the PI/WD Claims set forth in the Plan and Confirmation Order. Consistent with the Plan, the Trust Agreement and TDPs require the Trust to pay eligible claims from its existing assets on a *pro rata* basis so that it may treat similarly all present and future claims, and to provide appropriate supplemental payments to claimants upon recovery of material insurance proceeds.

### 2.   The Coverage Denial and Adversary Proceeding

The Trust has received hundreds of claims since its formation, and continues to evaluate claims on a rolling basis.  The Trust expects to receive substantial additional claims for years to come.

Following confirmation of the Plan, the Trustee sought to recover insurance proceeds for the benefit of the trust beneficiaries.  Over a period of several years, the Trustee unsuccessfully sought consensual resolution with MSI regarding its payment obligations.  On September 22, 2020, MSI formally denied coverage for the PI/WD Claims on the basis that the Policies had not yet been triggered because their underlying limits had not yet been exhausted.  (Adv. D.I. 40-3).  MSI argued that, even if the PI/WD Claims otherwise were eligible for coverage under the Policies, MSI was liable only for the amount of the Trust's actual distribution payments for compensable claims, rather than the full value of those claims.  (*Id.*)

On November 5, 2020, the Trustee filed a complaint in the Bankruptcy Court initiating an adversary proceeding seeking a declaration that "[MSI] must pay the full value of the PI/WD Claims and that (i) [MSI]'s obligations to indemnify the Trust, and (ii) the exhaustion of any self-insured retentions or deductibles shall not be measured by amounts paid by the Trust in connection with the PI/WD Claims."  (Adv. D.I. 1 at 13).  MSI filed a motion to dismiss the adversary proceeding on several grounds, including that (1) the Bankruptcy Court lacked subject matter jurisdiction over the adversary proceeding, (2) the Bankruptcy Court lacked personal jurisdiction over MSI, (3) certain forum selection clauses in the Policies require this dispute to be resolved in Japan, (4) MSI was not properly served with the complaint, and (5) the Trust failed to join Tokio Marine as a necessary party.

### 3.    The Opinion and Order

On December 20, 2021, the Bankruptcy Court entered the Order granting MSI's motion to

dismiss, and issued its accompanying Opinion, holding that (i) the claim "asserted in the

Complaint is an insurance coverage dispute under the MSI insurance policies and is not a core

proceeding," and (ii) "the coverage dispute must be resolved by a Japanese Court pursuant to the

forum selection clause in the MSI Policies." *In re TK Holdings,* 2021 WL 6101486, at *1. The

Court expressly did not examine MSI's other arguments. *Id.* at *1, n.3.

### C.    The Appeal

On January 3, 2022, the Trustee filed a timely notice of appeal. (D.I. 1). The appeal is

fully briefed. (D.I. 10, 11, 16). The Court did not hold oral argument because the facts and legal

arguments are adequately presented in the briefs and record, and the decisional process would not

be significantly aided by oral argument.

## II.    JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction as the appeal is from a final order. *See* 28 U.S.C. § 158(a)(1).

The Court reviews "the Bankruptcy Court's legal determinations de novo, its factual

findings for clear error, and its exercises of discretion for abuse thereof." *Professional Ins. Mgmt.*

*v. Ohio Casualty Group of Ins. Cos.*, 285 F.3d 268, 282-83 (3d Cir. 2002). Whether a bankruptcy

proceeding is a core or non-core proceeding is a question of law that this Court reviews de novo.

*In re Mintz*, 434 F.3d 222, 228 (3d Cir. 2006). The Court reviews for abuse of discretion the

ruling that the mandatory forum selection and choice of law provisions in the MSI Policies must

be enforced and the case should be dismissed on *forum non conveniens* grounds. *See Piper*

*Aircraft Co. v. Reyno*, 454 U.S. 235, 237 (1981); *Olde Homestead Golf Club v. Elec. Transaction*

*Sys. Corp.*, 714 F. App'x 186, 190 (3d Cir. 2017).

## III.    THE ARGUMENTS ON APPEAL

8

The Trustee's main argument is that the Bankruptcy Court erred in concluding that the issue in dispute in the adversary proceeding requires an adjudication of coverage issues under the MSI Policies and that it is therefore a non-core proceeding.  (*See* D.I. 10 at 15-16). .As courts in this Circuit do not require enforcement of forum selection clauses in core matters, the Trustee argues that the forum selection clause in the MSI Policies should not have been enforced here either.  (*Id*. at 16).  The Trustee's secondary argument is that even if the Bankruptcy Court was correct that the issue in dispute was a non-core proceeding, the Bankruptcy Court nevertheless abused its discretion in enforcing the forum selection clause.  (*Id*. at 26-29).

## IV.    ANALYSIS

The issues[2] raised by the Trustee on appeal turn on whether the complaint in the adversary proceeding asserts core bankruptcy issues.  As the Bankruptcy Court correctly explained, bankruptcy court jurisdiction potentially extends to four types of title 11 matters:

> (1) cases under title 11 (referring to the bankruptcy petition itself);
>
> (2) proceedings arising under title 11 (referring to steps within the bankruptcy case and to any sub-action within the case that may raise a disputed legal issue);
>
> (3) proceedings arising in a case under title 11 (referring to proceedings that are not based on any right expressly created by title 11, but nevertheless would have no existence outside the bankruptcy case); and
>
> (4) proceedings related to a case under title 11 (referring to proceedings in which the outcome could conceivably have any effect on the estate being administered in bankruptcy)."

*In re TK Holdings,* 2021 WL 6101496 at *6 (citing *Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 161 (3d Cir. 2004)).  As the Bankruptcy Court further explained,

---

[2] The Trustee's opening brief urges the Court to reject MSI's additional arguments for dismissal of the adversary proceeding.  (*See* D.I. 10 at 29-33 (addressing arguments before the Bankruptcy Court on personal jurisdiction and failure to join a necessary party)).  The Bankruptcy Court expressly declined to address those arguments, and I will not consider them either.

the first three categories comprise the "core" jurisdiction of the bankruptcy courts. *Id.* "Congress vested the bankruptcy courts with full adjudicative power with regard to 'core' proceedings." *Id.* at *7 (quoting *Resorts*, 372 F.3d at 162). This gives bankruptcy courts "comprehensive power to hear, decide and enter final orders and judgments." *Id.* (quoting *Longview Power, LLC v. First American Title Ins. Co. (In re Longview Power, LLC)*, 515 B.R. 107, 113 (Bankr. D. Del. 2014). The final category above consists of "non-core" or "related-to" proceedings, in which bankruptcy courts' "adjudicatory power is limited to hearing the dispute and submitting proposed findings of facts and conclusions of law to the district court." *Id.* (quoting *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999) (internal quotations omitted)).

The Third Circuit has instructed that two sources must be consulted by courts when determining whether a proceeding is core or non-core. *Halper*, 164 F.3d at 836. "First, § 157(b) provides an illustrative but non-exclusive list of proceedings that may be considered core." *Id.* (citing 28 U.S.C. § 157(b)(2)(A)-(O)). Second, even if a proceeding is not listed [in § 157(b)], "a proceeding is core [1] if it invokes a substantive right provided by title 11, or [2] if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case." *Id.*

"Core proceedings are actions by or against the debtor that arise under the Bankruptcy Code in the strong sense that the Code itself is the source of the claimant's right or remedy, rather than just the procedural vehicle for the assertion of a right conferred by some other body of law, normally state law." *In re United States Brass Corp.*, 110 F.3d 1261, 1268 (7th Cir. 1997). "If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987). A core proceeding "must have as its foundation the creation, recognition, or adjudication of rights which would not exist independent of a bankruptcy environment although of necessity there may be peripheral state law involvement." *In re Am.*

*Capital Equipment, LLC*, 325 B.R. 372, 375 (W.D. Pa. 2005) (citing *Hatzel & Buehler v. Orange & Rockland Utils.*, 107 B.R. 34, 39 (D. Del. 1989)).  On the other hand, courts generally find that state law causes of action brought by or on behalf of the debtor, which do not fall within the provisions of 28 U.S.C. § 157(b)(2)(B)-(N), are non-core matters. *See, e.g., In re Ramex Int'l, Inc.*, 91 B.R. 313, 315 (E.D. Pa. 1988).

    **A.**    **The Adversary Proceeding Is a Non-Core Matter**

The Bankruptcy Court properly rejected the Trustee's argument that this insurance coverage dispute satisfies either prong of the Third Circuit's test for determining whether a proceeding is core.

    **1.**    **The Coverage Dispute is Not a § 157(b)(2) Core Proceeding**

With respect to the first prong, the Bankruptcy Court rejected the Trustee's argument that the adversary proceeding fell within the enumerated core proceedings set forth at 28 U.S.C. § 157(b)(2)(A) ("matters concerning the administration of the estate") and § 157(b)(2)(O) ("other proceedings affecting the liquidation of the assets of the estate").  The Bankruptcy Court noted that § 157(b)(2)'s list of core proceedings "does not expressly include insurance coverage disputes." *In re TK Holdings*, 2021 WL 6101496 at *7 (footnote omitted).  "Because such disputes generally are based upon state law (or, in this case, foreign law), the catch-all provisions of § 157(b)(2)(A) and (O) cannot alone render such issues as 'core' proceedings." *Id.*  The Bankruptcy Court further noted other courts which have "declined to include a cause of action created solely by state law as a core matter under § 157(b)(2)(A) or (O), even if the issue arguably falls within the literal wording of the catch-all provisions." *Id.* (citing *In re Insilco Tech., Inc.*, 330 B.R. 512, 521 (Bankr. D. Del. 2005)).

According to the Trustee, the Bankruptcy Court's reasoning "presupposes that the Trustee's claim is a state-law insurance coverage dispute," which is not the case. (D.I. 10 at 19).

"The Trustee does not seek an interpretation of the [MSI] Policies, whether under state or foreign law," the Trustee asserts, and the claims in the adversary proceeding are not "cause[s] of action created solely by state law." *Id.* Rather, the Trustee argues, the adversary proceeding "seeks to understand the effects of the bankruptcy, the Plan, and the Confirmation Order on the [MSI] Policies—a matter that the Plan assigned exclusively to the Bankruptcy Court." (*Id.*)

I disagree that the Bankruptcy Court's reasoning presupposed, or erred in determining, the nature of this dispute. The Opinion provides a thorough explanation of how the Trustee's claim for declaratory relief can only be insurance coverage dispute, as the Plan and Confirmation Order merely adopt and incorporate the language of the MSI Policies. *See In re TK Holdings*, 2021 WL 6101496, at *9-10. The complaint seeks: a declaration that MSI 'must pay the full value of the PI/WD Claims and that (i) [MSI's] obligations to indemnify the Trust, and (ii) the exhaustion of any self-insured retentions or deductibles shall not be measured by amounts paid by the Trust in connection with the PI/WD Claims.'" *Id.* at *9. The language of the Plan, however, "supports MSI's position that the declaratory relief requested requires analysis of the insurance coverage under the MSI Policies, rather than the Plan itself." *Id.* "In particular, the Insurance Neutrality Provisions of Section 5.10(x)(i) confirmed that the Plan and Confirmation Order do not impair, alter, supplement, change, expand, decrease, or modify the *rights and obligations* of the Insurers or the Debtors." *Id.* "The Insurance Rights Transfer Provision of Section 5.10(f)(iii) also provided that, to the extent required by applicable law, the Trust is required to satisfy all deductibles and SIRs." *Id.* "These Plan provisions point the issues back to the MSI Policies." *Id.*

Notwithstanding the Trustee's attempt to frame it otherwise, this dispute does not require interpretation of the provisions in the Plan or Confirmation Order. Contract claims based upon state law (or, in this case, foreign law) "that arguably fall within these catch-all provisions have been held to be 'noncore' 'related proceedings' under § 157(c).... [W]e are persuaded that a court

should avoid characterizing a proceeding as 'core' if to do so would raise constitutional problems." *Piombo Corp. v. Castlerock Properties (In re Castlerock Properties),* 781 F.2d 159, 162 (9th Cir. 1986). The Bankruptcy Court correctly rejected this argument.

### 2. The Coverage Dispute Does Not Invoke a Substantive Right Provided by Title 11, and It Is Not a Proceeding, that by its Nature, Could Arise Only in the Context of a Bankruptcy Case

With respect to the second prong of the Third Circuit's test, the Bankruptcy Court further rejected the argument that the proceeding invokes a substantive right provided by title 11, or that it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case. *In re TK Holdings,* 2021 WL 6101496, at *7. In support of its conclusion, the Bankruptcy Court cited the *PRS Insurance Group* and *Stone & Webster* decisions, each of which considered a similar insurance coverage dispute arising post-plan confirmation. *See id.* at *7-8 (discussing *Logan v. Westchester Fire Ins. Co. (In re PRS Ins. Grp., Inc.)*, 445 B.R. 402 (Bankr. D. Del. 2011); and *SWE Consol. SWINC Estate v. Ace USA, Inc. (In re Stone & Webster, Inc.),* 367 B.R. 523 (Bankr. D. Del. 2007)). These cases support the Bankruptcy Court's determination that the insurance coverage dispute is non-core.[3]

The Bankruptcy Court cited the *PRS Insurance Group* case, which involved a chapter 11 trustee's post-plan confirmation action against the debtors' insurers for breach of two reinsurance agreements and bad faith refusal to pay claims. *In re TK Holdings*, 2021 WL 6101496, at *7

---

[3] The Bankruptcy Court also relied on the *Longview Power* case in reaching its conclusion. *See In re TK Holdings*, 2021 WL 6101496, at *8 (discussing *In re Longview Power*, 515 B.R. at 115). The *Longview Power* decision found that the insurance coverage dispute at issue "implicates state law rights and defenses as between [the insurer] and the Collateral Agent" and was non-core. *Id.* Although the *Longview Power* decision is consistent with the Bankruptcy Court's non-core determination, that case considered the core/non-core status of a coverage action brought prior to plan confirmation. It is therefore less persuasive than the other cases upon which the Bankruptcy Court relied.

(discussing *In re PRS Ins. Grp.*, 445 B.R. at 403). The *PRS Insurance Group* court rejected the trustee's argument that the proceeding was core on the basis that it sought "an [order] to turn over property of the estate." *In re PRS Ins. Grp.*, 445 B.R. at 404. In determining that the proceeding was non-core, the bankruptcy court noted that it "did not involve a dispute that could arise only in the context of a bankruptcy case. On the contrary, such suits arise under state law." *Id.* The suit did not involve any steps taken in the bankruptcy cases, and "the fact that the action may impact the size of the liquidating trust dies not affect the Court's determination of the core or non-core issue." *Id.* at 405. That court further cited four other cases that have held that an action by a debtor against its insurer is non-core. *Id.* at 404-05 (collecting cases).

The Bankruptcy Court further relied on the *Stone & Webster* decision, a case involving many similarities to this dispute, in reaching its conclusion that the adversary proceeding is non-core. *See In re TK Holdings,* 2021 WL 6101496 at *8. There, too, a post-confirmation trustee (as successor-in-interest to the debtors) brought a claim against the debtors' insurers to compel coverage. *In re Stone & Webster*, 367 B.R. at 524. Prior to plan confirmation, in a third party settlement, the debtors agreed to pay environmental liability claimants a set amount plus 50% of any recovery from the insurers. *Id.* The insurer's rights were—as here—fully preserved in the text of the plan, including any "rights, claims and/or defenses in any subsequent litigation regarding the insurance policies." *Id.* Following confirmation of debtors' plan, the trustee sued the insurer for damages and a declaration that the policies covered the environmental liabilities at issue. *Id.* The insurer argued that the proceeding was non-core because no substantive rights under the Bankruptcy Code were implicated, and the proceeding could exist outside of the debtors' bankruptcy cases. *Id.* at 527. The insurer further cited cases finding (holding?) that proceedings to determine insurance coverage for pre-petition activity are non-core. *Id.* The trustee, on the other hand, argued that the insurance coverage dispute could not exist outside of

14

bankruptcy because it was interrelated to a court-approved settlement between the debtors and third parties who filed proofs of claim for environmental clean-up costs. *Id*. at 528. The *Stone & Webster* court rejected the trustee's argument. It reasoned that the proofs of claim and bankruptcy court-approved settlement were only peripheral to the proceeding against the insurer, and the same claims could easily arise outside of a bankruptcy, as part of a complaint filed and settled in state or federal court. *Id*. at 528-29. That court further noted that "the prospect that a claim may provide economic benefit to the estate does not factor into the determination of whether a claim is core or non-core." *Id*. at 529 (citing *Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228, 1239 n.19 (3d Cir. 1994)). The court ultimately concluded that the matter was non-core: "At its root, this proceeding is a plain breach of contract claim governed by state law." *Id*.

The Trustee attempts to distinguish *Stone & Webster* by arguing that his claims could not exist but for the bankruptcy and "necessarily" arose postpetition. (D.I. 10 at 25). This argument is unavailing. The Trustee cannot establish Bankruptcy Court jurisdiction on the basis that a bankruptcy-created trust has initiated claims. Based on the Trustee's interpretation, any claim brought by the Trustee would satisfy such a test. The Trust itself was a creation of the Plan, and, under the Trustee's logic, any claims that the Trustee brings "necessarily" arise postpetition. Here, the Trustee's coverage claims fundamentally revolve around the terms of prepetition policies and prepetition tortious conduct.

The Bankruptcy Court's determination that the adversary proceeding is a non-core proceeding is consistent with the language of the statute and well supported by a long line of cases holding that an action by a debtor against its insurer is non-core.

### 3.    The Trustee's Additional Arguments Are Unavailing

The Trustee argues that the Bankruptcy Court erred in relying on the above cases, which are "garden variety coverage disputes," that "are clearly distinguishable from the instant case."

15

(D.I. 16 at 11-12). "None of these cases required interpretation of the provisions in the plan of reorganization or confirmation order, and none involved an insurer attempting to evade its obligations under its insurance policies due to its insured's bankruptcy." (D.I. 10 at 25-26). The parties' dispute here, involving whether the Debtors' bankruptcy has fundamentally altered MSI's obligations under the MSI Policies, could "arise only in the context of a bankruptcy case," the Trustee argues. (*Id.* at 20). "While disputes over the exhaustion of underlying limits or satisfaction of SIRs do exist outside of bankruptcy," the Trustee argues, MSI "could never have raised this argument to avoid paying claims pre-bankruptcy because there was no Plan or Confirmation Order mandating *pro rata* payment of the PI/WD claimants." (*Id.*)

The question of "whether the Debtors' bankruptcy has fundamentally altered MSI's obligations under the Policies" requires no analysis under the Plan because the Plan in no way altered the MSI Policies. The Plan provides that, "For all issues relating to insurance coverage, the provisions, terms, conditions, and limitations of the Insurances Policies shall control." (A2210-2211, Plan, § 5.10(x)(i)). The MSI Policies, as adopted by the express language of the Plan, provide that, irrespective of bankruptcy, MSI will provide coverage based on amounts actually paid. While the Trustee may prefer that the Debtors had negotiated different Plan language, the Trustee stands in the shoes of the Debtors now. I agree with MSI that what the Trustee's complaint really asks the Bankruptcy Court to do is "fundamentally redraft" the Plan and Confirmation Order, by striking onerous provisions and requiring MSI to "indemnify the Trust in full for any liability incurred in connection with claims that fall within the scope of the [MSI Policies'] coverage." (D.I. 11 at 14-15 (quoting A4598, Complaint at ¶ 31)). Such relief is not available under the terms of the MSI Policies. The Plan did not change that. The Bankruptcy Court did not err in determining that the adversary proceeding is a coverage dispute that requires analysis of the insurance coverage under the MSI Policies rather than the Plan itself.

16

The Trustee cites the *American Capital* case for the proposition that "a dispute arising from an insurer's challenge to a plan of reorganization's proposed treatment of the debtor's insurance rights is core." (D.I. 10 at 20 (citing *In re Am. Capital Equipment, LLC*, 325 B.R. 371 (W.D. Pa. 2005) (considering insurer's request for pre-plan confirmation determination that debtor's independent negotiations with asbestos claimants during the chapter 11 cases constituted a breach of debtors' insurance contracts, and determining that, under those circumstances, the insurer's claims were core in that they could not arise outside of the context of the bankruptcy))).

The Trustee also cites a recent ruling in the *Purdue Pharma* bankruptcy case. There, a proposed plan confirmation order included a finding that "the discharge or release of the Debtors through the Plan will not operate to relieve any other entity, including Insurance Companies, of their obligation to pay the Debtors' opioid-related liabilities, without regard to (i) whether the Debtors would be able to pay such liabilities in the first instance outside of bankruptcy, and (ii) whether the Debtors or a post-bankruptcy trust can or do pay those liabilities in full." *In re Purdue Pharma*, No. 19-23649 (RDD) (Bankr. S.D.N.Y. Sept. 17, 2021), ECF No. 3787 at §§ NN. The Bankruptcy Court overruled an objection that the proposed finding "concern[ed] non-core issues that ... relate to matters of insurance coverage rather than plan confirmation. *Id.*, ECF No. 3618. The Bankruptcy Court disagreed, noting that the insurance-related findings were not "general coverage issues, such as whether any claim against the insurance is subject to a coverage exclusion," but instead were properly determined as part of the plan confirmation process. *In re Purdue Pharma*, 633 B.R. 53, 63 (Bankr. S.D.N.Y. 2021)

The disputes in both *American Capital* and *Purdue* involved actions brought prior to plan confirmation, and, as MSI correctly points out, that distinction alone renders the jurisdictional analysis inapposite to this case—a dispute nearly four years post-confirmation over coverage issues stemming from prepetition insurance contracts. In both *American Capital* and *Purdue*, the

17

terms of, and negotiations leading to, the plans themselves were in dispute, in addition to their confirmation. Here, however, the Plan has long been confirmed and, as the Bankruptcy Court recognized, the Plan makes clear that the relief sought by the Trustee requires analysis of the MSI Policies, rather than the Plan itself.

**B.     The Bankruptcy Court Did Not Abuse its Discretion by Enforcing the Forum Selection Clauses**

Having found the proceeding to be non-core, the Bankruptcy Court considered MSI's argument that it should enforce the forum selection clauses in the MSI Policies and dismiss the case pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. The Bankruptcy Court noted at the outset of its analysis that, as the Supreme Court has determined, the appropriate way to enforce a forum selection clause pointing to a state or (as here) foreign forum is through the doctrine of *forum non conveniens,* and it considered MSI's request under that standard. *In re TK Holdings,* 2021 WL 6101496, at *10 n.81 (citing *Atlantic Marine Constr. Co. v. U.S. District Court for the W. District of Tex.,* 571 U.S. 49 (2013)).

The Bankruptcy Court concluded that "the coverage dispute must be resolved by a Japanese Court pursuant to the forum selection clause in the MSI Policies." *Id.* at *1. In bankruptcy, as in most other contexts, courts will respect an agreement by contract counterparties that any disputes arising thereunder be submitted to a particular venue and/or substantive law. *See SKF USA Inc. v. Okkerse*, 992 F. Supp. 2d 432, 443 (E.D. Pa. 2014) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)) ("Forum selection clauses are 'prima facie valid.'"). As the Bankruptcy Court observed, "The Third Circuit has held that forum selection clauses are binding upon bankruptcy courts in non-core proceedings." *In re TK Holdings*, 2021 WL 6101496, at *10 (quoting *Giuliano v. Genesis Financial Solutions, Inc. (In re Axiant, LLC)*, 2012 WL 5614588, at *2-3 (Bankr. D. Del. Nov. 15, 2012) (citing *In re Exide Technologies*, 544 F.3d 196, 206 (3d Cir.

2008) (holding that the forum selection clause would be enforced if the claims were determined to be non-core)). "Courts reason that the strong policy favoring centralization of bankruptcy proceedings in bankruptcy courts does not justify the non-enforcement of a forum selection clause in a non-core proceeding." *Axiant*, 2012 WL 5614588 at \*3 (citing *Coastal Steel Corp. v. Tilghman Wheelbrator Ltd.*, 709 F.2d 190, 201-02 (3d Cir. 1983), *overruled in part on other grounds by Lauro Line v. Chasser*, 490 U.S. 495 (1989)).

When "parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations." *Advanced Reimbursement Mgmt., LLC v. Plaisance*, 2019 WL 2502931, \*2 (D. Del. June 17, 2019) (quoting *Atl. Marine*, 571 U.S. at 66). "Therefore, forum selection clauses are considered to be "prima facie valid" and "should be enforced unless shown to be 'unreasonable' under the circumstances." *In re TK Holdings*, 2021 WL 6101496, at \*11 (quoting *SKF USA Inc.,* 992 F.Supp.2d at 443. "The plaintiff bears the burden 'of showing why the court should not transfer the case to the forum to which the parties agreed.'" *Id.* (quoting *Atl. Marine*, 571 U.S. at 63-64). "When deciding whether a forum selection clause is 'unreasonable,' courts may consider whether (i) enforcement would violate a strong public policy of the forum, (ii) the selected forum is so seriously inconvenient that it deprives a party of its day in court, or (iii) the clause was incorporated into the contract by fraud or overreaching." *Id.* (citing *Axiant*, 2012 WL 5614588 at 4; *SKF USA*, 992 F. Supp. 2d at 443-44).

With respect to the first factor—whether enforcement would violate a strong public policy of the forum—the Bankruptcy Court rejected the Trustee's argument that enforcement of the forum selection clauses would violate the policy in favor of requiring the U.S. Bankruptcy Courts to resolve disputes under the U.S. Bankruptcy Code or to interpret the Plan and Confirmation Order in light of U.S. Bankruptcy law. *Id.* at \*11. As the Bankruptcy Court noted, "the issue raised in the Complaint first requires interpretation and analysis of the MSI Policies under

Japanese law, rather than interpretation of the Plan or Confirmation Order." *Id.* "The MSI Policies were negotiated pre-petition between Japanese companies and require application of Japanese law. Therefore, public policy would fall in favor of enforcing the forum selection clause to permit the terms of a Japanese insurance policy to be determined in a Japanese court interpreting Japanese law." *Id.* Moreover, the Plan's insurance neutrality provision preserved the terms and provisions of the MSI Policies, including the forum selection clauses. *Id.*

With respect to the second factor—inconvenience that deprives a party of its day in court—the Bankruptcy Court acknowledged that, "Dismissing the adversary proceeding to allow the matter to be brought in Japan may seem a harsh result," but that it also must adhere to the Supreme Court's holding that inconvenience to the plaintiff is not part of the analysis when enforcing a valid forum selection clause: "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* (quoting *Atl. Marine*, 571 U.S. at 64).

While the Trustee asserts no argument under the third prong—fraud or overreaching— he argues on appeal that the forum selection clauses have no application to his claims. (D.I. 10 at 27-28). "Which claims are governed by the forum selection clause is determined by the language of the clause itself." (*Id.* (quoting *In re Broad St. Media LLC*, 2017 WL 5624879, at *8 (Bankr. D.N.J. Nov. 20, 2017)). Here, the forum selection clause provides. "Any dispute pertaining to the interpretation, application, or construction of this insurance contract shall be filed and resolved solely in a Japanese Court." (A4771, 2017 Policy Endorsement 10). "The Bankruptcy Court did not address the scope of the forum selection clause in its opinion," the Trustee argues, but rather erroneously "assumed" that the forum selection clauses covered the dispute at issue here. (D.I. 10 at 28). According to the Trustee, the dispute concerns the interpretation, application, and

construction of the Plan and Confirmation Order, not the MSI Policies.  (*Id.*)  Thus, the Trustee

asserts, "the forum selection clause does not even govern this dispute."  (*Id.*)

The Trustee's arguments against enforcement of the forum selection clause are based on

the same arguments that the proceeding is core: that "[r]esolution of this matter involves the

interpretation of the Plan and Confirmation Order, and concerns the effect of bankruptcy on third-

party obligations to U.S. debtors" which must be decided by a U.S. bankruptcy court.  (D.I. 10 at

26-27).  As discussed above, this case does not require clarification of the terms of the Plan and

Confirmation Order, nor how they should be interpreted.  Nor do I see how resolution of this

coverage dispute will require any determination of "the effect of bankruptcy on third-party

obligations to U.S. debtors."  (*Id.*)  I am not persuaded by the Trustee's policy argument either.

According to the Trustee, the Bankruptcy Court's conclusion that public policy favored permitting

the Japanese court to interpret the MSI Policies' terms constituted an abuse of discretion.

"[R]equiring a Japanese court to resolve a dispute regarding the impact of the Bankruptcy Code on

U.S. debtors offends the public policy of having bankruptcy courts resolve bankruptcy matters."

(*Id.* at 29.)  The dispute requires interpretation and analysis of the MSI Policies under Japanese

law, rather than interpretation of the Plan or Confirmation Order, and will require no consideration

of the "impact of the Bankruptcy Code."  In sum, "the strong policy favoring centralization of

bankruptcy proceedings in bankruptcy courts does not justify the non-enforcement of a forum

selection claims in a non-core proceeding."  *Axiant*, 2012 WL 5614588, at *3.

The Bankruptcy Court did not abuse its discretion by enforcing the forum selection

clauses.  The proceeding is non-core, the forum selection clauses encompass the dispute, and the

Trustee has failed to meet his burden of demonstrating that the forum selection clauses at issue

here are unreasonable.

## V.    CONCLUSION

For the reasons set forth herein, the Order is affirmed.

A separate order will be entered.